[994 NYS2d 271]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v LONG ISLAND RAILROAD (LIRR), a Subsidiary and Agency of the METROPOLITAN TRANSPORTATION AUTHORITY (MTA), Defendant.

Justice Court of the Village of Valley Stream, Nassau County, August 22, 2014

**APPEARANCES OF COUNSEL**

*Cheryl Hartell*, Jamaica, for defendant.

*Howard O'Rourke, Village Prosecutor*, Valley Stream, for plaintiff.

## OPINION OF THE COURT

ROBERT G. BOGLE, J.

Motion by the defendant Long Island Railroad (LIRR), a subsidiary and agency of the Metropolitan Transportation Authority (MTA), to dismiss the summons and informations pursuant to CPL 170.35 and 170.40, by counsel, is determined as hereinafter provided.

The defendant LIRR is charged with several violations of the Code of the Village of Valley Stream (V.S. Code). Two of the violations are for high grass and weeds (V.S. Code § 64-8 [C]). One summons is for having a large amount of debris, including bottles and cans, on the Long Island Railroad property (V.S. Code § 50-11); one charge is for excessive growth from trees overhanging the railroad properties (V.S. Code § 64-8 [C]); and two charges are for graffiti on property owned by the Long Island Railroad (V.S. Code § 21-2 [F]).

The defendant, by counsel, now moves to dismiss on two specific grounds. The first is under CPL 170.30 (1) (a), stating that the People have failed to establish a cause of action on the alleged grounds that the Village lacks jurisdiction over the defendant LIRR, specifically as a result of an alleged statutory exemption from local laws under Public Authorities Law § 1266 (8). Secondly, the defendant moves to dismiss in furtherance of justice pursuant to CPL 170.30 (1) (g) and 170.40. The People will consent to a dismissal in furtherance of justice due to the fact that the violations for which the defendant corporation was accused have been subsequently remedied. However, the People oppose a dismissal under the jurisdictional grounds and claim the summons were properly issued. The People note this is an ongoing problem over the last 20 years, where the Village is forced to issue summons due to the defendant's neglect, and the violations are routinely dismissed after the railroad remedies the violations.

The LIRR is a subsidiary and agency of the MTA. The MTA took ownership of the LIRR under powers granted under title 11 of article 5 of the Public Authorities Law (L 1965, ch 324, § 3; *Bujosa v Metropolitan Transp. Auth.*, 44 AD2d 849 [2d Dept 1974]). The MTA and LIRR are governed under title 11 of article 5 of the Public Authorities Law, sections 1260 through and

including 1279-c. The defendant specifically notes Public Authorities Law § 1266 (8), which states that no municipalities shall have jurisdiction over any facilities of the Authority or any of its activities or operations, subject to certain limitations. The subdivision also states that local laws and ordinances of a municipality shall not be applicable to the Authority, *the exception being such facilities that are devoted for purposes other than transportation or transit purposes*. Based on this analysis the defendant argues that the summons and informations should be dismissed.

The People, however, take exception to this interpretation of the statute and argue that the charges are valid under two specific grounds: (1) the activity for which the defendant is charged is strictly proprietary in nature and not related to its official purpose and (2) by way of contractual obligation with the Village of Valley Stream, the LIRR is obligated to maintain its property free and clear of certain violations. The court shall now discuss these issues.

As a general rule, in terms of liability, it is important to initially determine whether the authority's questioned activity is proprietary or related to its public purpose at the time the situation occurred. (*Applewhite v Accuhealth, Inc.*, 21 NY3d 420 [2013].) Defendant's position focuses on the powers and responsibilities to provide mass transportation and that a charge under a local ordinance would frustrate its continued effectiveness. However, this court finds it strains credulity to believe that graffiti on a building or garbage roadside or high grass and weeds would harm the effective transportation ability of the LIRR. Indeed, the cases that have been cited by the defendant focus on the public purpose responsibilities of the railroad as opposed to the proprietary function, which distinguishes them from the case at bar. In *Metropolitan Transp. Auth. v Village of Tuckahoe* (67 Misc 2d 895 [Sup Ct, Westchester County 1971]) the court held that a village was prohibited from denying the commuter railroad the opportunity to expand and build a bridge to accommodate 80 new passenger cars. Clearly, a public function of the Metropolitan Transportation Authority. In *People v Long Is. R.R.* (90 Misc 2d 269 [App Term, 2d Dept 1976]) the court held that the railroad was exempt from a town's sanitary code for operating fuel emitting diesel trains. Once again, clearly a public function of the public authority. Lastly, in *People v Metro-North Commuter R.R. Co.* (132 Misc 2d 1072 [Crim Ct, Bronx County 1986]) the MTA subsidiary agency was held

exempt from the city's sanitary laws due to the fact that providing fuel for the railroad (by highly flammable fluids being transported by trucks) was an activity clearly related to the function of the railroad and not of a proprietary nature. Indeed, the court concluded that the law grants the defendant public transportation authority the ability to do all things it deems are necessary, convenient or desirable to manage, control and direct its transportation responsibilities. Each of these three decisions focuses on that point. However, the case at bar focuses on secondary or proprietary purposes. A good example is *People v Witherspoon* (52 Misc 2d 320 [Suffolk Dist Ct 1966]). In *Witherspoon* the court held that the defendant was not exempt from local zoning authority where an advertisement was placed on a billboard on the public authority's property. The court ruled this was a proprietary activity, and not related to transportation. Similarly, in the instant case a state authority should not be exempt where graffiti is placed upon the walls of its public authority owned property. In an opinion of the New York State Comptroller (1979 Ops St Comp No. 79-2) the Comptroller's Office held the MTA responsible for appropriate zoning laws when it constructed an industrial complex which was not directly related to the commuter transportation, and merely housed offices. Clearly, in the instant case, walls and debris and grass are not connected to the purpose of transportation, and thus the public corporation should be deemed responsible and liable under local laws and justice court jurisdiction. (*Huerta v New York City Tr. Auth.*, 290 AD2d 33 [1st Dept 2001].) Accordingly, the court holds that the charges against the LIRR are proprietary and not public in nature, and do not relate to its transportation purposes.

The second issue presented by the Village Prosecutor relates to the contractual responsibilities and obligations of the MTA and its subsidiary, the LIRR. Public Authorities Law § 1265 (6) (a) authorizes the MTA and its subsidiaries to enter into contracts and execute all instruments necessary or convenient. (*Long Is. R.R. Co. v Public Serv. Commn. of State of N.Y.*, 30 AD2d 409 [2d Dept 1968].) Sometimes these contracts can even be inferred. (*Javeline v Long Is. R.R.*, 106 Misc 2d 814 [Civ Ct, Queens County 1981].) Here, the People rely on the transfer of real property between the LIRR and the Incorporated Village of Valley Stream dated August 23, 1962. This document was duly recorded in the Nassau County Clerk's Office at liber 7068, page 336, on September 17, 1962. The agreement provides the

Village of Valley Stream with certain properties connected to the LIRR. In the real property agreement, the LIRR shall have a perpetual easement for a variety of purposes, not the least of which to continue and maintain the properties and facilities as may be required. The agreement specifically and exclusively requires that maintenance be maintained by the LIRR and its successors. Following a review of this document, this court declares that responsibility for maintenance is not shared and remains exclusively in the control of the LIRR. And so, this leads this court to ask the next and final question, if the LIRR, although contractually bound, chooses not to maintain the property, then who shall be responsible to maintain the property? Obviously, the responsibility remains with and is invested in the Long Island Railroad and it is therefore its responsibility pursuant to law and contract.

Therefore, it is proper to hold the LIRR responsible under these local ordinances. Although local laws have long been referred to as "quasi-criminal" in nature, they are also by logic "quasi-civil" in nature as well. Villages are charged with power of governance of the public health, safety and welfare. (NY Const, art IX, § 2 [c] [10]; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372 [1989].) The Village imposition of a fine for failure to comply with a local law falls well within that authority. (Municipal Home Rule Law § 10 [4] [b]; *People v Hacker*, 76 Misc 2d 610 [Suffolk Dist Ct 1973].)

Lastly, the court will consider the motion to dismiss in furtherance of justice under CPL 170.30 (1) (g), which has been consented to by the People. Before dismissing in furtherance of justice, the court is obligated to review CPL 170.40, which details the circumstances for the courts to consider when reviewing such a motion. Under section 170.40 (1) (f) the court may dismiss if the purpose of imposing a sentence for the offense would not serve a useful purpose. Here, it would serve no useful purpose due to the fact that the violations have been corrected, although repeated actions might result in a different result in the future. (*People v Beecher*, 153 Misc 2d 247 [Valley Stream Just Ct 1992]; *People v Saito*, 149 Misc 2d 342 [Crim Ct, NY County 1990].)

In conclusion, the court holds that the defendant LIRR and MTA are contractually and legally obligated for the responsibility of removing graffiti, garbage, debris and high grass and weeds on their property and that the actions are proprietary in nature and not related to their public transportation purpose

and, as a result, this court maintains jurisdiction over the violations of law. However, the violations are dismissed in furtherance of justice on the consent of the People. Accordingly, the summons and informations are dismissed.